- Courtesy Copy -
Original Filed Electronically

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF NEW YORK *ex rel.* Carolyn Hinestroza,         Plaintiffs, <br><br> v. <br><br> Ralex Services, Inc. d/b/a "Glen Island Center For Nursing and Rehabilitation," Leah Friedman, and Will-Maur Associates, LLC, <br><br>         Defendants. | **STIPULATION AND ORDER OF SETTLEMENT** <br><br> Civil Action No. 10-CV-0822 (Korman, J.) (Azrack, M.J.) |

This Agreement is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General (OIG-HHS) of the Department of Health and Human Services (HHS) (collectively, the "United States"), Ralex Services, Inc. d/b/a/ Glen Island Center for Nursing and Rehabilitation ("Glen Island"), Leah Friedman ("Friedman"), Will-Maur Associates, LLC ("Will-Maur") (collectively, "Defendants"), and relator Carolyn Hinestroza ("Relator") (hereafter collectively referred to as "the Parties"), through their authorized representatives.

RECITALS

A.     Glen Island is a nursing home facility located in New Rochelle, New York. Glen Island provides long-term care, rehabilitation, subacute care, respite care, and dementia care for elderly and disabled individuals.

B.     Friedman is the owner and operator of Glen Island.   Collectively, Glen Island and Friedman shall be known in this Agreement as "Ralex."   Friedman will sign this Agreement on her own behalf and on behalf of Glen Island.

*Agreement*, Civil Action No. 10-CV-0822

C.    Will-Maur is a New York limited liability company that owns the real property

and premises upon and within which Glen Island is situated, at 490 Pelham Road, New

Rochelle, New York 10805.    The members of Will-Maur consist of Friedman; her husband,

Burton Flax; and their children, Willa and Maury Flax.

D.    On February 24, 2010, Relator filed an action pursuant to the *qui tam*

provisions of the False Claims Act, 31 U.S.C. § 3730, *et seq*., in the United States District

Court for the Eastern District of New York captioned *United States ex rel. Hinestroza v.*

*Ralex Services, Inc., et al.,* No. 10-CV-0822, (hereinafter "the Civil Action"), in which she

alleged that defendants used Patient Review Instruments ("PRIs") to submit falsely inflated

claims to Medicaid.

E.    The United States contends that Ralex submitted or caused to be submitted

claims for payment to the Medicaid Program (Medicaid), 42 U.S.C. §§1396-1396w-5, which

is funded in part by the federal government.

F.    The United States contends that it has certain civil claims against Ralex

arising from the following conduct, set forth more fully in its complaint-in-intervention,

filed August 18, 2014:

> Between April 1, 2002 and March 31, 2009, Ralex, through false information
> contained in PRIs, knowingly submitted falsely inflated claims for
> reimbursement to Medicaid regarding the levels of care provided to patients at
> Ralex's nursing home facility in New Rochelle, New York.

That conduct is referred to herein as the "Covered Conduct."

G.    Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the

proceeds of this Agreement and to Relator's reasonable expenses, attorneys' fees and costs.

*Agreement*, Civil Action No. 10-CV-0822

H.    To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Agreement, the Parties agree and covenant as follows:

TERMS AND CONDITIONS

1.    Ralex shall pay to the United States Eight Hundred and Eighty Thousand Dollars ($880,000) ("Settlement Amount") and interest on the Settlement Amount at a compound interest rate of 2.25% per annum from August 18, 2014 to July 15, 2019, plus any recovery pursuant to paragraph F of this Agreement, as follows:

A.    No later than seven (7) days after the Effective Date of this Agreement, Ralex will make an initial payment of One Hundred and Sixty Thousand Dollars ($160,000) by electronic funds transfer or cashier's check pursuant to written instructions to be provided by the office of the United States Attorney for the Eastern District of New York.

B.    Ralex will pay the remaining Seven Hundred and Twenty Thousand Dollars ($720,000), plus compound interest at 2.25 % per annum.   Ralex shall make five equal payments of $144,000, plus interest, as follows: $153,864.15 on July 15, 2015; $153,864.15 on July 15, 2016; $153,864.15 on July 15, 2017; $153,864.15 on July 15, 2018; and $153,864.15 on July 15, 2019.   Ralex agrees to wire or deliver a money order or cashier's check in the amount required on each date made payable to "The United States Department of Justice" and directed to Marilyn Chin, Supervisory Paralegal, Financial Litigation Unit, United States Attorney's Office, Eastern District of New York, 271 Cadman Plaza East, Brooklyn, New York, 11201.

3

*Agreement*, Civil Action No. 10-CV-0822

C.      Interest shall accrue on the unpaid Settlement Amount at the compound

interest rate of 2.25% per annum.    Collectively the Settlement Amount and interest received

by the United States shall be referred to as the Settlement Proceeds.

D.      The Parties agree that there shall be a fourteen-day grace period for each

Installment Payment under paragraph 1.A.    In the event that any payment under paragraph

1.A is not made either on the due date or within the grace period, the Parties agree that

Defendants will be in default of their obligations under this Agreement and that the United

States may file a consent judgment (the stipulation for consent judgment is attached hereto as

Attachment A) against them for the amount due and owing plus all costs of collection,

including attorney's fees and expenses incurred equal to ten percent (10%) of the total

amount owed, as well as post-judgment interest and other proper relief without further notice

to Defendants.   The United States, in its sole discretion, may exercise any rights granted by

law or in equity to collect on the debt.    Defendants agree not to contest any consent

judgment, offset, or any collection action undertaken by the United States pursuant to this

paragraph, either administratively or in any state or federal court.    The United States shall

take all measures available to it to execute on the consent judgment.

E.      Notwithstanding the foregoing, in the event of Default as defined in

Paragraph D, above, OIG-HHS may exclude Ralex from participating in all Federal health

care programs until Ralex pays the Settlement Amount and reasonable costs as set forth in

Paragraph D, above.    OIG-HHS will provide written notice of any such exclusion to Ralex.

Ralex waives any further notice of the exclusion under 42 U.S.C. §1320a-7(b)(7), and agrees

4

*Agreement*, Civil Action No. 10-CV-0822

not to contest such exclusion either administratively or in any state or federal court. Reinstatement to program participation is not automatic.   If at the end of the period of exclusion Ralex wishes to apply for reinstatement, Ralex must submit a written request for reinstatement to OIG-HHS in accordance with the provisions of 42 C.F.R. §§ 1001.3001-.3005.   Ralex will not be reinstated unless and until OIG-HHS approves such request for reinstatement.

      F.    Glen Island has brought a civil action against the State of New York regarding the appropriate Wage Equalization Factor ("WEF") that it alleges should have been used in the calculation of Medicaid rates at its facility from 1989 to present.   This case, entitled In the Matter of the Application of Ralex Services. Inc. d/b/a Glen Island Care Center v. Nirav R. Shah, M.D. M.P.H., as Commissioner of the New York State Department of Health, *et al.*, Index No. 1084/2014, is pending in the Supreme Court of the State of New York in Westchester County.   The WEF is a methodology that is used by Medicaid to adjust salary and fringe benefit prices so that cost comparisons can be made between similar facilities and appropriate costs can be determined and payments properly allocated.   In the event that, during any calendar year from the Effective Date of this Agreement until the Settlement Amount is paid in full on or before July 30, 2019, or in the event of a Default, before the Settlement Amount is paid in full, plus all costs of collection, Ralex succeeds in or settles its outstanding Wage Equalization Factor rate reimbursement appeal, it could receive an adjustment in its WEF and in turn, a reimbursement of funds for past Medicaid claims from the State of New York.   If this occurs, the funds shall be considered a windfall and Glen

5

*Agreement*, Civil Action No. 10-CV-0822

Island shall provide additional payment to the United States and State based on this windfall as follows:

| WEF Recovery | Payment to the United States and State[1] |
|---|---|
| 0-$1,999,999 | 40% or 42.5% |
| $2,000,000 – 3,999,999 | 35% or 37.5% |
| $4,000,000 – above | $1,800,000 |

The WEF recovery amount is determined <u>after</u> reasonable attorneys' fees and accountants' fees have been subtracted, based on the following formula:   <u>If attorneys' and accountants' fees are below $700,000 at the time of the judgment or settlement</u>: $600,000 automatic subtraction for attorneys' and accountants' fees (capped at $600,000), with no proof of fees required.   <u>If attorneys' and accountants' fees are $700,000 to $750,000 or above at the time of the judgment or settlement</u>:   Ralex must submit proof of attorneys' and accountants' fees in the form of itemized, paid invoices and descriptions of work performed.   In addition, each WEF recovery percentage bracket shall be raised by 2.5%, to 42.5% and 37.5%, respectively, with the subtraction of fees capped at $750,000.   The United States and State have the right to object to any paid invoices that are not fully documented and are not directly related to the WEF recovery action.   Payment of the WEF recovery amount to the United States and State shall be made within ten (10) business days of receipt of the WEF funds from the State of New York.   Ralex shall not unreasonably delay in settling or

---

1  Should there be a windfall payment, the United States shall receive 40% and the State shall receive 60% of the total windfall payment, after subtraction of appropriate attorney's fees.

*Agreement*, Civil Action No. 10-CV-0822

litigating the WEF action in any way such that the effect of the delay avoids its obligations

under the terms of this Agreement.   Any such unreasonable delay will constitute a material

breach of this Agreement and shall be immediately actionable by the United States,

administratively, in law or in equity.

2.   Conditioned upon the United States receiving the Initial and Installment

Payments from Ralex, the United States agrees that it shall pay a Relator's Share over time to

Relator, pursuant to terms set forth in a separate agreement, as soon as feasible after receipt

of the Initial and Installment Payments.   Should there be a WEF recovery, Relator shall be

entitled to a share of that recovery, at the same agreed-upon percentage contained in the

Relator's Share Agreement.

3.   Ralex shall resolve by separate agreement payment to Relator for expenses,

attorney's fees and costs.   Relator has agreed to dismiss her wrongful termination claims

under subsection 3730(h).

4.   Subject to the exceptions in Paragraph 7 (concerning excluded claims) below,

and conditioned upon Ralex's full payment of the Settlement Amount, and subject to

Paragraph 20, below (concerning bankruptcy proceedings commenced within 91 days of the

Effective Date of this Agreement or any payment made under this Agreement), the United

States releases Ralex from any civil or administrative monetary claim the United States has

for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil

Monetary Penalties Law, 42 U.S.C. §1320a-7a; the Program Fraud Civil Remedies Act, 31

U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust

7

*Agreement,* Civil Action No. 10-CV-0822

enrichment, and fraud.

5.     Subject to the exceptions in Paragraph 7 below, and conditioned upon Ralex's full payment of the Settlement Amount, and subject to Paragraph 20, below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement or any payment made under this Agreement), Relator, for herself and for her heirs, successors, attorneys, agents, and assigns, releases Ralex from any civil monetary claim the Relator has on behalf of the United States for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733.

6.     OIG-HHS expressly reserves all rights to institute, direct, or to maintain an administrative action seeking exclusion against Ralex from Medicare, Medicaid, and all other Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) under 42 U.S.C. § 1320a-7(a) (mandatory exclusion), or 42 U.S.C. § 1320a-7(b) or 42 U.S.C. § 1320a-7a (permissive exclusion).

7.     Notwithstanding the releases given in Paragraphs 4 and 5 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

      a.     Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

      b.     Any criminal liability;

      c.     Except as explicitly stated in this Agreement, any administrative liability, including mandatory or permissive exclusion from Federal

8

*Agreement*, Civil Action No. 10-CV-0822

health care programs;

   d.    Any liability to the United States (or its agencies) for any conduct other

         than the Covered Conduct;

   e.    Any liability based upon obligations created by this Agreement;

   f.    Any liability for express or implied warranty claims or other claims for

         defective or deficient products or services, including quality of goods

         and services;

   g.    Any liability for personal injury or property damage or for other

         consequential damages arising from the Covered Conduct; and

   h.    Any liability of individuals, other than Leah Friedman, as specified in

         this Agreement.

   8.    Relator and her heirs, successors, attorneys, agents, and assigns shall not

object to this Agreement but agree and confirm that this Agreement is fair, adequate, and

reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B).   Conditioned

upon Relator's receipt of a Relator's Share of the Settlement Amount, which shall be set

forth in a separate agreement, Relator and her heirs, successors, attorneys, agents, and

assigns fully and finally release, waive, and forever discharge the United States, its agencies,

officers, agents, employees, and servants, from any claims arising from the filing of the Civil

Action or under 31 U.S.C. § 3730, et seq., and from any claims to a share of the proceeds of

this Agreement and/or the Civil Action.

   9.    Relator, for herself, and for her heirs, successors, attorneys, agents, and

*Agreement*, Civil Action No. 10-CV-0822

assigns, releases Ralex, its officers, agents, and employees, from any liability to Relator

arising from the filing of the Civil Action, except to the extent provided under 31 U.S.C.

§ 3730(d) for expenses, attorney's fees and costs.

10.     Ralex has provided sworn financial disclosure statements (Financial

Statements) to the United States and the United States has relied on the accuracy and

completeness of those Financial Statements in reaching this Agreement.   Ralex warrants that

the Financial Statements are complete, accurate, and current.   If the United States learns of

asset(s) in which Ralex had an interest at the time of this Agreement that were not disclosed in

the Financial Statements, or if the United States learns of any misrepresentation by Ralex on,

or in connection with, the Financial Statements, and if such nondisclosure or

misrepresentation changes the estimated net worth set forth in the Financial Statements by

$100,000 or more, the United States may collect the full Settlement Amount plus one hundred

percent (100%) of the value of the net worth of Ralex previously undisclosed.   Ralex agrees

not to contest any collection action undertaken by the United States pursuant to this provision,

and immediately to pay the United States all reasonable costs incurred in such an action,

including attorney's fees and expenses.

11.     In the event that the United States, pursuant to Paragraph 10 (concerning

disclosure of assets), above, opts to rescind this Agreement, Ralex agrees not to plead, argue,

or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or

similar theories, to any civil or administrative claims that (a) are filed by the United States

within sixty (60) calendar days of written notification to Ralex that this Agreement has been

10

*Agreement*, Civil Action No. 10-CV-0822

rescinded, and (b) relate to the Covered Conduct, except to the extent these defenses were available on February 24, 2010.

    12.    Ralex waives and shall not assert any defenses Ralex may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.   Nothing in this Paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

    13.    Ralex fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Ralex has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation and prosecution thereof.

    14.    Ralex fully and finally releases the Relator from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Ralex has asserted, could have asserted, or may assert in the future against the Relator, related to the *qui tam* complaint filed by Relator and the Relator's investigation and prosecution thereof.

11

*Agreement*, Civil Action No. 10-CV-0822

15.     The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare carrier or intermediary or any state payer, related to the Covered Conduct; and Ralex agrees not to resubmit to any Medicare carrier or intermediary or any state payer any previously denied claims related to the Covered Conduct, and agrees not to appeal any such denials of claims.

16.     If applicable, Ralex agrees to the following:

a.     Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Ralex, its present or former officers, directors, employees, shareholders, and agents in connection with:

(1)     the matters covered by this Agreement;

(2)     the United States' audit(s) and investigation(s) of the matters covered by this Agreement;

(3)     Ralex's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

(4)     the negotiation and performance of this Agreement; and

(5)     the payment Ralex makes to the United States pursuant to this Agreement and any payments that Ralex may make to Relator, including

12

*Agreement,* Civil Action No. 10-CV-0822

costs and attorney's fees,

are unallowable costs for government contracting purposes, including all federal health care

programs   (hereinafter referred to as Unallowable Costs).

b.   Future Treatment of Unallowable Costs:   Unallowable Costs shall be

separately determined and accounted for in nonreimbursable cost centers, by Ralex, if Ralex

is a cost-reimbursed entity, and Ralex shall not charge such Unallowable Costs directly or

indirectly to any contracts with the United States or any State Medicaid program, or seek

payment for such Unallowable Costs through any cost report, cost statement, information

statement, or payment request submitted by Ralex or any of its subsidiaries or affiliates to the

Medicare, Medicaid, TRICARE, or FEHBP Programs.

c.   Treatment of Unallowable Costs Previously Submitted for Payment:

Ralex further agrees that within 90 days of the Effective Date of this Agreement it shall

identify to applicable Medicare fiscal intermediaries, carriers, and/or contractors, and

Medicaid fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in

payments previously sought from the United States, or any State Medicaid program,

including, but not limited to, payments sought in any cost reports, cost statements,

information reports, or payment requests already submitted by Ralex or any of its subsidiaries

or affiliates, and shall request, and agree, that such cost reports, cost statements, information

reports, or payment requests, even if already settled, be adjusted to account for the effect of

the inclusion of the unallowable costs.   Ralex agrees that the United States, at a minimum,

shall be entitled to recoup from Ralex any overpayment plus applicable interest and penalties

13

*Agreement*, Civil Action No. 10-CV-0822

as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.    Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies.    The United States reserves its rights to disagree with any calculations submitted by Ralex or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this paragraph) on Ralex or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

      d.    Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine Ralex's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

17.    This Agreement is intended to be for the benefit of the Parties only.    The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 18 (waiver for beneficiaries paragraph), below.

18.    Ralex agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

19.    Ralex warrants that it has reviewed its financial situation and that it currently is solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and shall remain solvent following payment to the United States of the Settlement Amount.    Further, the Parties warrant that, in evaluating whether to execute this Agreement, they (a) have

14

*Agreement*, Civil Action No. 10-CV-0822

intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to Ralex, within the meaning of 11 U.S.C. § 547(c)(1), and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange.    Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which Ralex was or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

20.    If within 91 days of the Effective Date of this Agreement or of any payment made under this Agreement, Ralex commences, or a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking to have any order for relief of Ralex's debts, or seeking to adjudicate Ralex as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for Ralex or for all or any substantial part of Ralex's assets, Ralex agrees as follows:

a.    Ralex's obligations under this Agreement may not be avoided pursuant to 11 U.S.C. § 547, and Ralex shall not argue or otherwise take the position in any such case, proceeding, or action that:    (i) Ralex's obligations under this Agreement may be avoided under 11 U.S.C. § 547; (ii) Ralex was insolvent at the time this Agreement was entered into, or became insolvent as a result of the payment made to the United States; or (iii) the mutual promises, covenants, and obligations set forth in this Agreement do not constitute a

15

*Agreement*, Civil Action No. 10-CV-0822

contemporaneous exchange for new value given to Ralex.

   b.   If Ralex's obligations under this Agreement are avoided for any reason,

including, but not limited to, through the exercise of a trustee's avoidance powers under the

Bankruptcy Code, the United States, at its sole option, may rescind the releases in this

Agreement and bring any civil and/or administrative claim, action, or proceeding against

Ralex for the claims that would otherwise be covered by the releases provided in Paragraphs 4

and 5 above.   Ralex agrees that (i) any such claims, actions, or proceedings brought by the

United States are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result

of the action, case, or proceedings described in the first clause of this Paragraph, and Ralex

shall not argue or otherwise contend that the United States' claims, actions, or proceedings are

subject to an automatic stay; (ii) Ralex shall not plead, argue, or otherwise raise any defenses

under the theories of statute of limitations, laches, estoppel, or similar theories, to any such

civil or administrative claims, actions, or proceeding that are brought by the United States

within 120 calendar days of written notification to Ralex that the releases have been rescinded

pursuant to this Paragraph, except to the extent such defenses were available on February 24,

2010; and (iii) the United States has a valid claim against Ralex in the amount of $2,640,000,

and the United States may pursue its claim in the case, action, or proceeding referenced in the

first clause of this Paragraph, as well as in any other case, action, or proceeding.

   c.   Ralex acknowledges that its agreements in this Paragraph are provided

in exchange for valuable consideration provided in this Agreement.

   21.   Upon receipt of the initial payment described in Paragraph 1, above, the Parties

*Agreement,* Civil Action No. 10-CV-0822

shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal Without

Prejudice of the Civil Action.   Once Ralex has completed all payments, with interest, due

under the terms of this Agreement, the Parties shall sign and file in the Civil Action a Joint

Stipulation of Dismissal with Prejudice.

22.   Each Party shall bear its own legal and other costs incurred in connection with

this matter, including the preparation and performance of this Agreement, except for the

attorney's fees and costs to which Relator is entitled pursuant to 31 U.S.C. § 3730(d).

23.   Each Party and signatory to this Agreement represents that it freely and

voluntarily enters in to this Agreement without any degree of duress or compulsion.

24.   This Agreement is governed by the laws of the United States.   The exclusive

jurisdiction and venue for any dispute relating to this Agreement is the United States District

Court for the Eastern District of New York.   For purposes of construing this Agreement, this

Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall

not, therefore, be construed against any Party for that reason in any subsequent dispute.

25.   This Agreement constitutes the complete agreement between the Parties.   This

Agreement may not be amended except by written consent of the Parties and an Order of the

Court.

26.   The undersigned counsel represent and warrant that they are fully authorized to

execute this Agreement on behalf of the persons and entities indicated below.

27.   This Agreement may be executed in counterparts, each of which constitutes an

original and all of which constitute one and the same Agreement.

17

*Agreement*, Civil Action No. 10-CV-0822

28.   This Agreement is binding on Ralex's successors, transferees, heirs, and assigns.

29.   This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

30.   All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

31.   This Agreement shall be executed by all parties. Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.   This Agreement is effective on the date that it is approved by the Court and entered onto the Court's docket through an electronic filing notice (Effective Date of this Agreement).

[this section intentionally left blank]

*Agreement*, Civil Action No. 10-CV-0822

<u>THE UNITED STATES OF AMERICA</u>

DATED: 8/18/14          BY: _____
                             ERIN E. ARGO
                             Assistant United States Attorney
                             United States Attorney's Office
                             Eastern District of New York
                             271 Cadman Plaza East
                             Brooklyn, New York 11201


DATED: 8/18/14          BY: _____
                             ROBERT K. DECONTI
                             Assistant Inspector General
                                for Legal Affairs
                             Office of Counsel to the Inspector General
                             Office of Inspector General
                             United States Department of
                                Health and Human Services

19

*Agreement,* Civil Action No. 10-CV-0822

<u>RALEX - DEFENDANT</u>

DATED: 8-14-14                  BY: _____

LEAH FRIEDMAN
President and Owner
Ralex Services, Inc.
d/b/a Glen Island Center for Nursing and
Rehabilitation
490 Pelham Road
New Rochelle, New York 10805

August 14, 2014
DATED: _____        BY: _____

GABRIEL NUGENT, ESQ.
Counsel for Ralex
Hiscock and Barclay, LLP
300 South State Street
Syracuse, New York 13202

<u>LEAH FRIEDMAN - DEFENDANT</u>

DATED: 8-14-14                  BY: _____

LEAH FRIEDMAN

<u>WILL-MAUR ASSOCIATES, LLC</u>

DATED: 8-14-14                  BY: _____

LEAH FRIEDMAN
President and Member
Will-Maur Associates, LLC

20

*Agreement*, Civil Action No. 10-CV-0822

## CAROLYN HINESTROZA - RELATOR

DATED: 8-15-14                    BY: _____
                                        CAROLYN HINESTROZA

DATED: 8-15-14                    BY: _____
                                        SARA WYN KANE, ESQ.
                                        Valli Kane & Vagnini
                                        Counsel for Relator
                                        600 Old Country Road, Suite 519
                                        Garden City, New York 11530

SO ORDERED.

August 17, 2014

/s/ Judge Edward R. Korman
_____
THE HONORABLE EDWARD R. KORMAN
UNITED STATES DISTRICT COURT JUDGE

21

# ATTACHMENT A
To the U.S. Stipulation and Order of Settlement
10-CV-0822

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and STATE OF NEW YORK *ex rel.* Carolyn Hinestroza, Plaintiffs, | ) ) ) ) | **CONSENT JUDGMENT** |
| v. | ) ) ) | |
| Ralex Services, Inc. d/b/a "Glen Island Center For Nursing and Rehabilitation," Leah Friedman, and Will-Maur Associates, LLC, | ) ) ) | Civil Action No. 10-CV-0822 (ERK)(JMA) |
| Defendants. | ) ) ) | |

It appearing to the Court that plaintiff the United States of America, acting through the United States Department of Justice and on behalf of the Office of the Inspector General of the Department of Health and Human Services (collectively, the "United States"), Defendants Ralex Services, Inc. doing business as Glen Island Center for Nursing and Rehabilitation, Leah Friedman, Will-Maur Associates, LLC (collectively, "Defendants"); and Relator Carolyn Hinestroza (the "Relator") (hereafter collectively referred to as the "Parties"), through their authorized representatives, have resolved the matters in controversy between them and have consented to the terms of this judgment.

NOW, THEREFORE, based upon the advice and stipulation of the Parties, and good cause appearing,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED, AS FOLLOWS:

1. Upon agreement of the Parties, the Court hereby enters this Consent Judgment in the principal amount of Eight Hundred Eighty Thousand Dollars ($880,000) plus compound interest at 2.25% per annum, for a total of Nine Hundred Twenty-Nine Thousand Three Hundred Twenty Dollars and Seventy-Five Cents ($929,320.75), less any payments made

*Consent Judgment -- 10-CV-0822 (Korman, J.)*

prior to default, plus all costs of collection, including attorney's fees and expenses incurred equal to ten percent (10%) of the principal amount owed, as well as post-judgment interest at the legal post-judgment rate in effect on the date the Stipulation and Order of Settlement was entered by the Court, and other proper relief, as to the United States and in so doing, incorporates by reference the Stipulation and Order of Settlement entered in this action in August, 2014.

2.  This Court shall retain jurisdiction to enforce the terms and conditions of this Consent Judgment.

3.  The Parties acknowledge that they have read the foregoing Consent Judgment, are aware of their right to a trial in this matter and have waived that right.

4.  Defendants have no defense, counterclaim or offset thereto, and do hereby confess judgment to the United States as a result of their failure to pay a settlement owed to the United States to resolve claims arising under the False Claims Act, 31 U.S.C. § 3730, et seq.

5.  This confession of judgment is for debts now justly and truly due and owing to the United States.

6.  The United States shall have the right to use all available enforcement remedies to satisfy the judgment, including, but not limited to, those set forth in the Federal Debt Collection Procedures Act, 28 U.S.C. 3001, et seq. and filing an abstract of judgment against any real property in which the defendants have an interest.

7.  Defendants consent to entry of this Consent Judgment by the court, as set forth above.

8.  The Parties state that no promise of any kind or nature whatsoever (other than the terms

*Consent Judgment — 10-CV-0822 (Korman, J.)*

of the Consent Judgment) was made to induce them to enter into this Consent Judgment, that they have entered into this Consent Judgment voluntarily, and that this Consent Judgment constitutes the entire agreement between the Parties, except as set forth in the Stipulation and Order of Settlement entered in August, 2014.

**AGREED AND CONSENTED TO:**

DEFENDANT RALEX SERVICES, INC. D/B/A GLEN ISLAND CENTER FOR NURSING AND REHABILITATION

Dated: New Rochelle, New York
August 18, 2014

By: _____
LEAH FRIEDMAN
President and Owner
Ralex Services, Inc. d/b/a Glen Island
Center for Nursing and Rehabilitation
490 Pelham Road
New Rochelle, New York 10805

Dated: Syracuse, New York
August 18, 2014

By: _____
GABRIEL M. NUGENT, ESQ.
Counsel for Defendants
Hiscock & Barclay LLP
300 South State Street
Syracuse, New York 13202

DEFENDANT LEAH FRIEDMAN

Dated: New Rochelle, New York
August 18, 2014

By: _____
LEAH FRIEDMAN
4 Polo Drive
Old Westbury, New York 11568

DEFENDANT WILL-MAUR ASSOCIATES, LLC

Dated: New Rochelle, New York
August 18, 2014

By: _____
LEAH FRIEDMAN
President and Member
Will-Maur Associates, LLC

3

*Consent Judgment — 10-CV-0822 (Korman, J.)*

APPROVED AS TO FORM AND SUBSTANCE:

Dated: Brooklyn, New York
     August 18, 2014

By: _____
    ERIN E. ARGO
    Assistant United States Attorney
    271 Cadman Plaza East
    Brooklyn, New York 11201

Dated: ~~New York, New York~~ Lakewood, New Jersey
     August 15, 2014

By: _____
    CAROLYN HINESTROZA
    Relator

Dated: Garden City, New York
     August 15, 2014

By: _____
    SARA WYN KANE, ESQ.
    Counsel for Carolyn Hinestroza
    Valli Kane & Vagnini LLP
    600 Old Country Road, Suite 519
    Garden City, New York 11530

SO ORDERED

On this _____ day of _____, 20___.

_____
HONORABLE EDWARD J. KORMAN
United States District Judge

4